THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **TERRANCE HARDEN,** | ) | |
| **B58708,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:25-cv-02171-GCS** |
| | ) | |
| **KERLEY,** | ) | |
| **DENNIS LARSON,** | ) | |
| **GANG GERST,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM & ORDER**</u>

**SISON, Magistrate Judge:**

Plaintiff Terrance Harden, an inmate of the Illinois Department of Corrections ("IDOC") who is currently detained at Big Muddy River Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, Harden faults the defendants for failing to provide timely and adequate medical care for chronic nasal issues that were ultimately diagnosed as associated with maxillary sinus cancer.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen

---

[1] The Court has jurisdiction to resolve Harden's motions and to screen his Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 4) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the IDOC, Wexford, and this Court.

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Harden alleges that Defendants Dr. Larson and physician's assistant Gerst were deliberately indifferent to his medical condition from January 2024 through January 2025. (Doc. 1, p. 3). He frequently complained of excruciating pain in his nostril, numbness, a loss of smell, excessive nose bleeding, and diminished hearing. He claims that during the twelve months he sought care from Larson and Gerst, he reported excruciating pain, migraines, and nasal pain, but they prolonged the issue, delayed care, and refused pain relief. *Id.* at p. 4. The only relief they offered was nasal decongestion spray. *Id.* Harden further alleges that during an examination, Larson forcibly shoved a finger far into his nostril as retaliation for Harden threatening to sue over the lack of care. *Id.* at p. 4-5. Harden alleges that he notified "all three defendants" that his nostril conditions were worsening by the day. He also states that he threatened all three with legal action. *Id.*

At some point, Harden was transported to the hospital by ambulance where he underwent surgery and transfusions. (Doc. 1, p. 4). He claims that an oncologist eventually diagnosed him with stage four metastatic squamous carcinoma of the maxillary sinus. *Id.* at p. 3. The oncologist allegedly indicated that the condition could have been detected earlier by a timely referral to an ear-nose-throat specialist who would have used imaging to pinpoint the underlying issue. *Id.* Harden expressed a desire to

pursue four counts against the defendants, but all appear to target the same facts and legal concepts. *Id.* at p. 5. Harden seeks monetary damages. *Id.* at p. 8. He attached one relevant grievance to his complaint.

DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** **Eighth Amendment deliberate indifference claim against Defendants Larson and Gerst for the care they provided from January 2024-January 2025;**
>
> **Count 2:** **Eighth Amendment deliberate indifference claim against Defendant Kerley for the care provided from January 2024-January 2025;**
>
> **Count 3:** **First Amendment retaliation or Eighth Amendment cruel and unusual punishment claim against Dr. Larson for allegedly shoving a finger into Harden's nasal cavity to cause pain.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

Under the Eighth Amendment, inmates are entitled to adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2)

---

[2]    *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

the defendant acted with deliberate indifference to his medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the first step of the analysis, a serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Some of the indications of a serious medical condition include whether if untreated it could result in "further significant injury or unnecessary and wanton infliction of pain," it "significantly affects an individual's daily activities," or it features "chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (cleaned up). At the second step, to determine if a medical professional acted with deliberate indifference, courts look to the provider's subjective state of mind. *See Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An inmate need not show that a doctor explicitly intended harm or believed it would occur, but he must show more than negligence, medical malpractice, or even objective recklessness. *Id.* Deliberate indifference is a culpability standard akin to criminal recklessness. *See Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

Harden's allegations against Defendants Larson and Gerst are sufficient to proceed on Count 1. Ultimately, the viability of this claim will depend on the evidence produced, the specific course of care (or lack thereof) provided from January 2024-January 2025, and the professional standard of care for Harden's symptoms and form of cancer. For now, his allegation that Larson and Gerst pursued a completely ineffective course of care that left him suffering in pain for an entire year is sufficient to proceed.

By contrast, Count 2 against Defendant Kerley is insufficient because Harden has not explained Kerley's knowledge of his condition or Kerley's authority to act. At most, Harden discusses Kerley twice in the complaint in shotgun fashion, alleging he threatened to sue all three defendants and that all three failed to treat persistent symptoms. These allegations are insufficient for the Court to understand what role Kerley played in Harden's medical situation. Thus, Count 2 against Kerley is dismissed without prejudice as insufficiently pled.

Finally, Harden faults Defendant Larson for retaliating by shoving a finger into his nasal cavity after he threatened to sue over the lack of care. Though there has not been a published opinion explicitly addressing if an inmate's threat to sue a prison employee is protected speech, the undersigned finds that Harden's threat to sue Gerst, Larson, or Kerley was not protected because speech inconsistent with an inmate's status as a prisoner is not protected. *See, e.g.*, *Drogosz v. Newkirk*, Cause No. 3:22-CV-387-DRL-MGG, 2023 WL 2237756, at *4-6 (N.D. Ind. Feb. 23, 2023) (collecting cases and thoroughly discussing whether an inmate's threat to sue is protected speech, and concluding it was not protected where an inmate threatened to sue a grievance official over failing to timely process grievances); *Caffey v. Maue*, No. 15-3772, 679 Fed. Appx. 487, 490-492 (7th Cir. 2017) (insubordinate remarks to staff that are not consistent with an inmate's status as a prisoner are not protected speech). Furthermore, inmates are entitled to complain about the need for medical care, but they are not entitled to demand specific care. Harden obviously threatened to sue to force a different course of care. This sort of conduct is not

consistent with Harden's status as a prisoner, so it cannot form a basis for a retaliation claim.

Nevertheless, to the extent that Harden wishes to hold Dr. Larson liable for intentionally inflicting unnecessary pain by jamming a finger into his nostril, Harden may proceed against Dr. Larson under the Eighth Amendment for this conduct. Count 3 shall proceed solely under the Eighth Amendment against Dr. Larson.

### MOTION FOR RECRUITMENT OF COUNSEL

Harden seeks counsel based on his limited education and inability to find his own counsel. (Doc. 3). When confronted with a request under § 1915(e)(1) for recruited counsel, the district court makes the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *See Pruitt v. Mote*, 503 F.3d 647, 654–655 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). Harden provided proof that he attempted to contact five lawyers or legal entities for representation. (Doc. 1, p. 17-19, Doc. 3-1. p. 1).

Additionally, the Court must consider Harden's competence to represent himself, and the complexity of the case. "Some of the circumstances that require judicial consideration are the phase of the litigation, if the prisoner has been transferred between

facilities, if the claims involved the state of mind of the defendant such as those involving deliberate indifference, and if the case involves complex medical evidence, including expert testimony." *Thomas v. Wardell*, 951 F.3d 854, 860 (7th Cir. 2020); *see also Eagan*, 987 F.3d at 682–683. A case becomes increasingly complex as litigation enters later stages, particularly trial. *See, e.g.*, *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). As for competence, "[a] judge will normally consider 'the plaintiff's literacy, communication skills, educational level, and litigation experience' along with any evidence in the record 'bearing on the plaintiff's intellectual capacity and psychological history.' But these are merely factors that are ordinarily relevant. No one factor is 'necessary or conclusive.'" *Jones v. Anderson*, 116 F.4th 669, 675-676 (7th Cir. 2024) (internal citations omitted). The court must examine specifically the plaintiff's ability to litigate the case, as opposed to the ability of any "jailhouse lawyer" assisting the plaintiff. *Eagan*, 987 F.3d at 682.

Here, Harden alleges that he has only been able to proceed with the assistance of his cellmates because he has some grade school education and reads at a third-grade level. (Doc. 3, p. 2). He included TABE test results that reflect an average fourth grade level with respect to math and reading. (Doc. 1, p. 14-16). While Harden has multiple factors that weigh in favor of appointing counsel, this case is still at the earliest phase of the litigation when tasks remain relatively simple. Now that the Court has reviewed the pleading, it will conduct service of process, and the next obligation lies with the defendants filing answers. Once answers are filed, the Court will then be able to determine if this case will face an initial hurdle concerning Harden's exhaustion of administrative remedies.  The exhaustion stage of a case is rather straightforward and

relies primarily on an inmate's own knowledge of the steps he took to file grievances. Even for inmates with limited legal knowledge or communication skills, the exhaustion phase is often manageable because it is closely guided by the Court's detailed scheduling order. Given that this case is still at this very early phase, and that many of the next steps will be led by the Court and the defendants, the Court is not yet persuaded that Harden needs counsel. However, as this case proceeds to later stages, the Court will entertain a new motion for recruitment of counsel so that it can better assess Harden's ability to proceed as the case gets more complex.

DISPOSITION

**IT IS HEREBY ORDERED THAT Count 1** of the Complaint may proceed against Defendants Dr. Larson and Gang Gerst. **Count 3** may also proceed against Dr. Larson solely concerning the Eighth Amendment. By contrast, **Count 2** is insufficient as pled against Defendant Kerley and the Clerk of Court shall **TERMINATE** Defendant Kerley. Additionally, **Count 3** may not proceed on a theory of retaliation for the reasons explained above.

The Clerk of Court is **DIRECTED** to prepare for Defendants Dr. Larson and Gang Gerst: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the

Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. *See* FED. R. CIV. PROC. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Harden's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

**DATED:  February 4, 2026.**

Digitally signed by Judge Sison
Date: 2026.02.04 12:20:50 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed as a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.